

Jonathan O. Hafen (6096)
D. Chad McCoy (8997)
PARR WADDOUPS BROWN GEE & LOVELESS
185 South State, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

Stephen J. Hill (1493)
STEPHEN J. HILL, LC
185 South State, Suite 1300
Salt Lake City, Utah 84111
Telephone: (801) 328-1308
Facsimile: (801) 322-4139

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PRO-FIT WORLDWIDE FITNESS, INC., an Island of Nevis corporation, and SPORTS HYGIENE, an Israeli partnership, by JOSEPH (YOSEF) and JACKIE (JAACOV) SIMSOLO, its general partners,<br><br>Plaintiffs<br><br>vs.<br><br>FLANDERS CORPORATION, a North Carolina corporation, PRECISIONAIRE OF UTAH, INC., a Utah corporation, FLANDERS/PRECISIONAIRE INC., a foreign corporation, PRECISIONAIRE, INC., a foreign corporation, AIRSEAL WEST, INC., a Utah corporation, and STEVEN K. CLARK, an individual,<br><br>Defendants. | **AMENDED COUNTERCLAIM OF AIRSEAL WEST, INC.**<br><br>Case No. 2:00CV 0985G<br><br>Honorable J. Thomas Greene |

61

| | |
|---|---|
| AIRSEAL WEST, INC., a Utah corporation,<br><br>    Cross-Claim Plaintiff,<br><br>vs.<br><br>PRO-FIT WORLDWIDE FITNESS, INC., an Island of Nevis corporation, and SPORTS HYGIENE, an Israeli partnership, by JOSEPH (YOSEF) and JACKIE (JAACOV) SIMSOLO, its general partners,<br><br>    Counterclaim Defendants. | |

Airseal West, Inc. ("Airseal") complains and alleges by way of counterclaim against Pro-Fit Worldwide Fitness, Inc. ("Pro-Fit"), Sports Hygiene, Joseph (Yosef) Simsolo and Jackie (Jaacov) Simsolo (collectively the "Counterclaim Defendants") as follows:

A. The Parties Dealings.

1. From late 1998 through December 2000, Airseal manufactured treadmills and parts specifically designed by and exclusively for the Counterclaim Defendants.

2. Pursuant to their arrangement, Pro-Fit would send Airseal purchase orders and production forecasts.

3. Based on these demands, Airseal would order a sufficient inventory of parts to complete manufacture of the requested treadmills by the expected ship date. The procurement of inventory required a lead time of approximately 90 days.

4. In addition to parts for production, the parties agreed that instead of warranty obligations, because the treadmills were primarily destined for international sale, Airseal would include additional component parts with all orders to allow the Counterclaim Defendants to make

2

any necessary repairs. Consequently, Airseal would acquire 10% more inventory than needed for manufacture of the requested treadmills.

5. The treadmills were produced FOB Airseal's plant. The Counterclaim Defendants handled the over seas shipping of the treadmills and parts and would from time to time provide Airseal with shipping schedules.

6. The shipping schedules set forth the shipping container number, the shipping container size, the destination country, the quantity of treadmills to be shipped and the shipping date.

7. Airseal continuously modified its inventory procurement and production schedules to meet these shipping requirements.

8. When a shipping a container was complete and loaded, Airseal would invoice Sports Hygiene for the treadmills and parts.

9. In practice, if the invoice contained a clerical or other error, Jackie or Joseph Simsolo would request a credit from Airseal. Any request for a credit would be evaluated by Airseal and, if valid, would be applied via a credit memo to the amounts outstanding.

B. Treadmills Shipped and Accepted.

10. To date, the Counterclaim Defendants have been invoiced and failed to pay for $266,601.77 worth of treadmills and parts shipped by Airseal and accepted by the Counterclaim Defendants.

11. The following chart provides the Invoice Number, Shipping Date and the Amount Outstanding from these open accounts:

| Invoice Date | Invoice/Cr # | Date Goods Shipped | Original Amount of Invoice | Amount Outstanding |
|---|---|---|---|---|
| 20000802 | 1332 | 5/29/00 | $281.65 | $281.65 |
| 20000802 | 1333 | 5/30/00 | $239.40 | $239.40 |

3

| | | | | |
|---|---|---|---|---|
| 20000714 | 1301 | 5/31/00 | $38,400.00 | $14,033.11 |
| 20000720 | 1317 | 7/20/00 | $740.42 | $740.42 |
| 20000720 | 1318 | 7/20/00 | $500.00 | $500.00 |
| 20000720 | 1319 | 7/20/00 | $17,680.50 | $17,680.50 |
| 20000808 | 1345 | 8/11/00 | $12,000.00 | $12,000.00 |
| 20000808 | 1346 | 8/11/00 | $42,933.75 | $42,933.75 |
| 20000824 | 1395 | 8/11/00 | $27,888.00 | $27,888.00 |
| 20000824 | 1396 | 8/11/00 | $13,642.50 | $13,642.50 |
| 20000829 | 1403 | 8/11/00 | $39,840.00 | $39,840.00 |
| 20000822 | 1376 | 8/28/00 | $225.03 | $225.03 |
| 20000822 | 1377 | 8/28/00 | $6.69 | $6.69 |
| 20000822 | 1378 | 8/28/00 | $435.33 | $435.33 |
| 20000822 | 1379 | 8/28/00 | $390.30 | $390.30 |
| 20000822 | 1389 | 8/28/00 | $130.56 | $130.56 |
| 20000822 | 1390 | 8/28/00 | $741.92 | $741.92 |
| 20000822 | 1391 | 8/28/00 | $584.13 | $584.13 |
| 20000830 | 1409 | 9/6/00 | $712.53 | $712.53 |
| 20000830 | 1410 | 9/6/00 | $561.52 | $561.52 |
| 20001003 | 1488 | 10/3/00 | $828.40 | $828.40 |
| 20001010 | 1496 | 10/10/00 | $24,648.00 | $24,648.00 |
| 20001010 | 1497 | 10/10/00 | $10,833.75 | $10,833.75 |
| 20001017 | 1516 | 10/17/00 | $498.46 | $498.46 |
| 20001017 | 1517 | 10/17/00 | $93.66 | $93.66 |
| 20001017 | 1518 | 10/17/00 | $25.32 | $25.32 |
| 20001017 | 1519 | 10/17/00 | $100.90 | $100.90 |
| 20001020 | 1523 | 10/20/00 | $1,219.79 | $1,219.79 |
| 20001107 | 1552 | 11/7/00 | $11.81 | $11.81 |
| 20001107 | 1553 | 11/7/00 | $80.85 | $80.85 |
| 20001128 | 1583 | 11/28/00 | $14,442.00 | $14,442.00 |
| 20001128 | 1584 | 11/28/00 | $4,012.50 | $4,012.50 |
| 20001129 | 1596 | 11/29/00 | $282.69 | $282.69 |
| 20010101 | 11727094 | 12/30/00 | $20.00 | $20.00 |
| 20010101 | 11727097 | 12/30/00 | $870.92 | $870.92 |
| 20010101 | 11727105 | 12/30/00 | $39,840.00 | $39,840.00 |
| 20010101 | 11727106 | 12/30/00 | $224.28 | $224.28 |
| 20001221 | 103 | | ($1,440.00) | ($1,440.00) |
| 20001221 | 104 | | ($1,008.00) | ($1,008.00) |
| 20010102 | 106 | | ($1,190.42) | ($1,190.42) |
| 20010102 | 107 | | ($1,360.48) | ($1,360.48) |

Total Owed for Goods Accepted                                $     266,601.77

    12.    The last four items listed in Paragraph 11 are credit memos issued to Sports Hygiene for clerical errors related to the above referenced invoices.

13. In addition to these credit memos, the Counterclaim Defendants requested, but did not receive, additional credits with respect to invoice number 11727105 ($1,440) and invoice number 1523 ($1,219.79). Airseal will assume that those credits are valid and should be applied against the amount owed and outstanding.

14. With the reduction of all credits requested on the outstanding invoices, the Counterclaim Defendants owe $263,941.98 on treadmills and parts provided and shipped by Airseal and accepted by the Counterclaim Defendants.

15. Aside from the requested credits, Airseal has received no complaints about the treadmills and parts it shipped to the Counterclaim Defendants.

C. Treadmills Manufactured and Identified.

16. In addition to the treadmills and parts accepted by the Counterclaim Defendants, Airseal has manufactured and identified 30 additional treadmills for which no delivery or shipping information was provided by the Counterclaim Defendants.

17. Under the parties' invoicing arrangement, these treadmills were priced as follows:

| Treadmill | Quantity Remaining | Invoice Price | Total |
| --- | --- | --- | --- |
| 250 Europe | 11 | $421.31 | $4,634.41 |
| 300 Europe | 9 | $504.00 | $4,536.00 |
| 300/P Europe | 10 | $523.00 | $5,230.00 |
|  |  |  | $14,400.41 |

D. Inventory Procured.

18. In addition to the treadmills and parts described above, Airseal ordered and received inventory for the manufacture of additional treadmills as required by the Counterclaim Defendants.

5

19. Because the Counterclaim Defendants failed to pay for treadmills already shipped by Airseal and accepted by the Counterclaim Defendants, Airseal stopped procuring new inventory and stopped accepting purchase orders.

20. Attached as Exhibit A hereto is an inventory list identifying the quantity, cost and description of the inventory parts still in the possession of Airseal.

21. Airseal has attempted to salvage these parts and mitigate its damages by selling them in the open market. However, the parts are too specialized to sell in a commercially reasonable manner.

22. Airseal has remaining from the inventory purchased prior to May 23, 2000, approximately $512,502.30 in treadmill parts.

23. At all times, Airseal has only manufactured treadmills for the Counterclaim Defendants.

24. Airseal relied on Jackie Simsolo to provide pricing information for the various treadmills and parts. Airseal also relied on Jackie Simsolo to specify design and construction processes for the treadmills to be ordered by Pro-Fit.

25. In contravention of his obligations, Jackie Simsolo provided false and misleading information to Airseal regarding pricing of treadmills and parts. Specifically, Jackie Simsolo proposed pricing on treadmills which Jackie Simsolo knew or should have known was below Airseal's cost of production and which would not permit Airseal to successfully compete in the treadmill business.

26. As a result of Jackie Simsolo's misrepresentations and other intentional and negligent misconduct, Airseal has incurred significant damages.

## CLAIM ONE
## BREACH OF CONTRACT

27. Airseal hereby incorporates paragraphs 1 through 28 of this counterclaim.

28. The agreements described herein were binding on the parties.

29. Airseal fully and satisfactorily performed its obligations under these agreements.

30. The Counterclaim Defendants breached these agreements by, among other things, failing to pay for the products it received and accepted from Airseal and by failing to honor purchase orders.

31. Airseal has been damaged by the Counterclaim Defendants' breaches of the agreements in an amount to be proven at trial.

## CLAIM TWO
## UNJUST ENRICHMENT

32. Airseal hereby incorporates paragraphs 1 through 26 of its counterclaim.

33. The Counterclaim Defendants received treadmills, parts, and other equipment from Airseal with a value in excess of $260,000.00.

34. Airseal had a reasonable expectation that it would be fully compensated and/or repaid for the value of these treadmills, parts and other equipment.

35. The treadmills, parts and other equipment provided to the Counterclaim Defendants conferred benefits upon the Counterclaim Defendants.

36. The Counterclaim Defendants knew, or should have known, that Airseal expected compensation for the treadmills, parts and other equipment provided.

37. Counterclaim Defendants have failed to pay for these products.

38. By wrongfully retaining the treadmills, parts, and other equipment, the Counterclaim Defendants have been unjustly enriched to the detriment of Airseal.

### CLAIM THREE
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

39. Airseal hereby incorporates paragraphs 1 through 26 of its counterclaim.

40. The covenant of good faith and fair dealing is implied in the agreements between Airseal and the Counterclaim Defendants referred to in this counterclaim. By the misconduct described herein, the Counterclaim Defendants have breached this covenant of good faith and fair dealing.

41. As a result of the Counterclaim Defendants' breaches of the covenant of good faith and fair dealing implied in the agreements, Airseal has been damaged in an amount to be proven at trial.

### CLAIM FOUR
### OFFSET

42. Airseal hereby incorporates paragraphs 1 through 26 of its counterclaim.

43. To the extent that the Counterclaim Defendants are awarded any amount pursuant to the Complaint in this matter, Airseal is entitled to an offset of the amounts and benefits it has conferred upon the Counterclaim Defendants but for which Airseal has not been paid as required by the agreements between the parties.

44. Airseal also is entitled to an offset for amounts awarded pursuant to its counterclaims.

8

## CLAIM FIVE
### PROMISSORY ESTOPPEL

45. Airseal hereby incorporates paragraphs 1 through 26 of its counterclaim.

46. As described above, the Counterclaim Defendants agreed to purchase certain products from Airseal with the knowledge that Airseal would rely on the Counterclaim Defendants' promises in that regard. In addition, Jackie Simsolo made certain promises to Airseal regarding pricing of treadmills and parts.

47. In reasonable reliance on the Defendants' promises, Airseal ordered certain parts and took other actions to its detriment, as alleged herein.

48. The Counterclaim Defendants' failure to abide by their promises is unjust and has caused and will continue to cause Airseal to suffer damages in an amount that will be proven at trial.

## CLAIM SIX
### MISREPRESENTATION/FRAUDULENT INDUCEMENT

49. Airseal hereby incorporates paragraphs 1 through 26 of its counterclaim.

50. Jackie Simsolo made a series of fraudulent misrepresentations to Airseal. For example, prior to the execution of a letter agreement between the parties, which Steven Clark executed on behalf of Airseal, Simsolo represented to Mr. Clark that other Airseal personnel had agreed to the provisions in that letter agreement.

51. Following the execution of that letter agreement it became apparent that the representations of Jackie Simsolo were false.

52. In addition, Jackie Simsolo made numerous representations to induce Airseal to enter into the treadmill business and to jointly design and manufacture treadmills and parts

9

for Jackie Simsolo and the other Counterclaim Defendants. Among other things, Jackie Simsolo made certain representations to Airseal with respect to pricing of treadmills and pricing of parts at specified volumes. Jackie Simsolo's representations as to costs at which Airseal could obtain parts and produce treadmills were false.

53. Jackie Simsolo also represented to Airseal that the treadmills should be of a certain design.

54. The representations by Jackie Simsolo were false when made by him.

55. At the time Jackie Simsolo made the representations to Airseal, he knew them to be false.

56. Jackie Simsolo made the representations with the intent to deceive Airseal and for the purpose of inducing Airseal to take actions to its detriment.

57. At the time the representations were made, Airseal was ignorant of the falsity of the representations and believed them to be true.

58. In reliance on the representations mentioned above, Airseal executed the letter agreement, produced and manufactured treadmills and parts, and took other actions to its detriment. Had Airseal known the actual facts, it would not have executed the letter agreement, produced and manufactured treadmills and parts, or taken other actions to its detriment.

59. Airseal's reliance on the representations set forth herein was reasonable under the circumstances.

60. Jackie Simsolo's misrepresentations and fraudulent inducement have damaged Airseal and will continue to damage Airseal in an amount that will be proven at trial.

61. The aforementioned conduct of the Counterclaim Defendants was an intentional misrepresentation, deceit or concealment of a material fact known to them with the intention on the part of the Counterclaim Defendants of depriving Airseal of property or legal rights, or otherwise causing injury, and was malicious conduct that subjected Airseal to a cruel and unjust hardship in conscious disregard of Airseal's rights, so as to justify an award of exemplary and punitive damages.

## CLAIM SEVEN
## RESCISSION

62. Airseal hereby incorporates paragraphs 1 through 26 of its counterclaim.

63. To the extent that there are any agreements between the parties, Airseal is entitled to rescission of those agreements based upon, alternatively, mutual mistake of the parties, agreement by the parties, accord and satisfaction, failure of consideration, the fact that there was never a meeting of the minds between the parties, and/or because the agreements were fraudulently induced by the Counterclaim Defendants.

## CLAIM EIGHT
## NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

64. Airseal hereby incorporates paragraphs 1 through 26 of its counterclaim.

65. The Counterclaim Defendants failed to exercise reasonable care, skill and competence in providing reliable information to Airseal with respect to, among other things, the following:

11

    a.     the pricing of treadmills and parts;

    b.     the cost of manufacturing treadmills and parts;

    c.     the design of treadmills and parts; and

    d.     the manufacturing processes of treadmills and parts.

66. In addition, the Counterclaim Defendants' through Jackie Simsolo' negligently misrepresented to Airseal the potential pricing of treadmills and parts at specified volumes, the costs of manufacturing treadmills and parts, the design of treadmills and parts, and the manufacturing processes for such treadmills and parts.

67. The negligence and negligent misrepresentations of the Counterclaim Defendants as set forth herein have caused Airseal to incur damage in an amount to be proven at trial.

68. The damages suffered by Airseal were proximately caused by the failure of the Counterclaim Defendants to use reasonable care, skill, and competence as set forth herein and in making the above-described negligent misrepresentations.

69. Airseal is entitled to recover all damages caused by such negligence and negligent misrepresentations by the Counterclaim Defendants in an amount to be proven at trial.

## CLAIM NINE
## DECLARATORY JUDGMENT

70. Airseal hereby incorporates paragraphs 1 through 26 of its counterclaim.

71. There is a justiciable case of actual controversy concerning the rights and obligations of Airseal under the agreements as alleged by the Counterclaim Defendants.

72. The Counterclaim Defendants' material breaches of the agreements between them and Airseal with respect to, inter alia, non-payment for treadmills shipped to and accepted by the Counterclaim Defendants caused concern to Airseal regarding the Counterclaim Defendants' future performance.

73. Airseal sought but did not receive adequate assurances of performance from the Counterclaim Defendants.

74. Pursuant to 28 U.S.C. § 2201(a) and based on the conduct of the Counterclaim Defendants as set forth herein, Airseal is entitled to a declaratory judgment as follows:

   (a) that the Counterclaim Defendants failed to give adequate assurances of performance under Utah Code Ann. 70A-2-609;

   (b) that the Counterclaim Defendants failure to provide Airseal assurances under the circumstances was a repudiation of the agreements between the parties; and

   (c) that because of the Counterclaim Defendants' conduct, Airseal is and was entitled to the remedies set forth in Utah Code Ann. 70A-2-610.

75. Airseal requests a jury trial on all issues so triable.

WHEREFORE, Airseal requests the Court to enter judgment in its favor and against the Counterclaim Defendants as follows:

1. Under Claim One, for judgment in favor of Airseal and against the Counterclaim Defendants in an amount to be determined to be Airseal's damages, plus interest and the costs of this action.

2. Under Claim Two, for judgment in favor of Airseal and against the Counterclaim Defendants in the amount the Court determines that the Counterclaim Defendants have been unjustly enriched, plus interest and the costs of this action.

3. Under Claim Three, for judgment in favor of Airseal and against the Counterclaim Defendants in an amount to be determined to be Airseal's damages, plus interest and the costs of this action.

4. Under Claim Four, for judgment in favor of Airseal and against the Counterclaim Defendants for the amount of the offset to which the Court deems Airseal to be entitled, plus interest and the costs of this action.

5. Under Claim Five, for judgment in favor of Airseal and against the Counterclaim Defendants in an amount to be determined to be Airseal's damages, plus interest and the costs of this action.

6. Under Claim Six, for judgment in favor of Airseal and against the Counterclaim Defendants in an amount to be determined to be Airseal's damages, plus interest and the costs of this action, and for punitive damages in an amount to be determined at trial.

7. Under Claim Seven, for rescission of alleged agreements between the parties.

8. Under Claim Eight, for judgment in favor of Airseal and against the Counterclaim Defendants and in an amount to be determined to be Airseal's damages, plus interest and the cost of this action.

9. Under Claim Nine, for judgment in favor of Airseal declaring:

(a) that the Counterclaim Defendants' failed to give adequate assurances of performance under Utah Code Ann. 70A-2-609;

(b) that the Counterclaim Defendants failure to provide Airseal assurances under the circumstances was a repudiation of the agreements between the parties; and

(c) that because of the Counterclaim Defendants' conduct, Airseal is and was entitled to the remedies set forth in Utah Code Ann. 70A-2-610. Under all claims, for Airseal's costs and attorneys' fees in bringing this counterclaim.

10. Under all claims, for Airseal's costs and attorneys' fees in bringing this counterclaim.

11. Under all claims, for such other and further relief as the Court deems appropriate.

DATED this 16th day of April, 2002.

PARR WADDOUPS BROWN GEE & LOVELESS
STEPHEN J. HILL, LC

By: *[signature]*
Jonathan O. Hafen
Stephen J. Hill
D. Chad McCoy
Attorneys for Defendant and Cross-Claim Plaintiff Airseal West, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of April, 2002, I served a true and correct copy of the foregoing **AMENDED COUNTERCLAIM OF AIRSEAL WEST, INC.,** via first-class U.S. mail, postage prepaid to the following:

>Richard A. Rappaport
>Jeffrey L. Silvestrini
>COHNE, RAPPAPORT & SEGAL
>525 East First South, Fifth Floor
>P.O. Box 11008
>Salt Lake City, UT   84147-0008

*/s/ Melisa Smith*

8925v1  (mtg)
8925.2
8925v3

16

# Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.